**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Joe Hand Promotions, Inc., | : | Case No. 3:13CV951 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| KSD, Inc., et al., | : | |
| | : | **MEMORANDUM AND ORDER** |
| Defendants. | : | |

## I. INTRODUCTION

The parties have consented to the undersigned Magistrate entering final judgment in this anti-piracy

case under the Federal Communications Act of 1934, as codified in 47 U.S.C. § 605; the Cable

Communications Policy Act of 1984, as codified in 47 U.S.C. § 553, and a state law prohibition against

conversion.  Pending are cross Motions for Summary Judgment (Docket Nos. 20 & 30), Defendants' Motion to

Dismiss and Opposition to Summary Judgment (Docket No. 30), Plaintiff's Reply Brief in Support of Summary

Judgment (Docket No. 32), Defendants' Supplemental Brief Opposing Summary Judgment and Seeking

Dismissal (Docket No. 36) and Plaintiff's Supplemental Brief in Support of Summary Judgment and Opposing

Dismissal (Docket No. 39).  For the reasons that follow, the Magistrate denies Defendants' Motion to Dismiss,

and the cross-Motions for Summary Judgment.

## II. PARTIES

Plaintiff Joe Hand Promotions, Inc. ("Plaintiff"), is a Pennsylvania corporation with its principal place of business in Feasterville, Pennsylvania (Docket No. 1, pp. 2-3 of 7).  Joe Hand Promotions, Inc., is a closed-circuit distributor of sports and entertainment programming (Docket No. 20, Attachment, p. 1 of 9). As part of Plaintiff's business, it acquires commercial distribution rights to television programming and then sub-licenses that programming, for a fee, to commercial establishments so that they can exhibit the programming to their patrons (Docket No. 1, p. 3 of 7).  To achieve this, Plaintiff spends money to market, advertise, promote and deliver its programming to its customers (Docket No. 1, p. 3 of 7).

Defendant KSD, Inc. ("Defendant KSD"), is a corporation under the laws of the State of Ohio that owns and operates the Six Pack Bar & Grill (Docket No. 30, Attachment 1, p. 17 of 48).

Defendant Kypros Diacou ("Defendant Diacou"), is the sole shareholder of KSD, Inc. (Docket No. 40, Attachment 1, p. 17 of 48).

For ease of discussion, Defendant KSD and Defendant Diacou will be collectively referred to as "Defendants."

## III. FACTUAL AND PROCEDURAL BACKGROUNDS

Zuffa, LLC d/b/a the Ultimate Fighting Championship®, a Nevada corporation, owns the content of a television event titled *UFC 129: Georges St. Pierre v. Jake Shields* (hereinafter "the UFC event"), which was broadcast on April 30, 2011.  Pursuant to an agreement with Zuffa, Plaintiff acquired exclusive commercial distribution rights to the UFC event via closed circuit television to commercial outlets.  Zuffa authorized Plaintiff to sell licenses to commercial establishments allowing them to show the UFC event to their patrons based on the size of the establishment.  The parties do not contend that there was any sub-licensing agreement between Plaintiff and Defendants.

According to President, Joe Hand Jr., Plaintiff began to experience serious erosion in the sale of their proprietary programming to commercial customers throughout the United States through piracy of their broadcasts by unauthorized and unlicensed establishments (Docket No. 20, Attachment 1, p. 2 of 9).  To combat the erosion of its business, Plaintiff maintains a piracy program comprised of investigators tasked with building cases for enforcement actions against signal pirates who unlawfully show their content (Docket No. 20, Attachment 1, p. 2 of 9). As part of that piracy program, Investigator Ernesto A. Tatad of M.B. Scurto & Associates, Inc., allegedly visited Defendants' Six Pack Bar & Grill on Saturday, April 30, 2011 (Docket No. 20, Attachment 2).  According to Mr. Tatad's affidavit, he entered the Six Pack Bar & Grill at approximately 10:19 p.m. and stayed for approximately 73 minutes (Docket No. 20, Attachment 2).  During his time inside the Six Pack Bar & Grill, Mr. Tatad's affidavit states that he observed the UFC event being played on seven televisions, specifically an undercard fight between Jose Aldo and Mark Hominick (Docket No. 20, Attachment 2).

Defendants dispute Mr. Tatad's observations.  By sworn affidavit, Defendant Diacou asserts that he was not present at the Six Pack Bar & Grill until approximately 1 a.m. on the morning of May 1, 2011 (Docket No. 30, Attachment 2, p. 2 of 2).  Defendant Diacou's affidavit also reflects that he undertook his own investigation and that the UFC event at issue was not broadcast at the Six Pack Bar & Grill on the evening of April 30, 2011, but that from time to time, they do show free UFC fights (Docket No. 30, Attachment 2, p. 2 of 2).  Costas Christides, a Six Pack Bar & Grill patron also submitted an affidavit claiming that he was present in the Six Pack Bar & Grill on April 30, 2011, from 10 p.m. until 12:30 a.m. and that the Jose v. Mark Hominick fight was not broadcast (Docket No. 30, Attachment 3).

On April 26, 2013, Plaintiff filed a Complaint for damages against both Defendant KSD, Inc., and its alleged alter ego Kypros Diacou, in the Northern District of Ohio, Western Division (Docket No. 1).  The

3

Complaint alleges violations of 47 U.S.C. § 605 (Count 1), 47 U.S.C. § 553 (Count 2), and asserts a state law conversion claim (Count 3) (Docket No. 1).  Defendants responded to the Complaint, generally denying the allegations and asserting affirmative defenses that: (1) Plaintiff has failed to state a claim upon which relief may be granted; (2) Plaintiff's claims are barred by the doctrines of latches and waiver; and (3) Plaintiff's claims are barred by the doctrine of unclean hands (Docket No. 6).

On February 18, 2014, Plaintiff filed a Motion for Summary Judgment on Counts 1 and 2, but not on its state law conversion claim (Docket No. 20).  On April 18, 2014, Defendants filed their omnibus pleading opposing Plaintiff's Motion for Summary Judgment, seeking to dismiss the complaint and for summary judgment as to Defendant Diacou (Docket No. 30).

On June 25, 2014, this Court issued a Memorandum and Order denying Defendants' Motion to Dismiss pending Plaintiff's submission of the contract granting it the requisite proprietary rights to maintain its claims (Docket No. 33).  The Court also stayed the Motions for Summary Judgment pending any amendments to the pleadings and completion of any additional discovery (Docket No. 33).

On July 2, 2014, Plaintiff filed a redacted version of the agreement (Docket No. 35, Attachment 1).  On July 15, 2014, Defendants filed a Supplemental Brief in Opposition to Plaintiff's Motion for Summary Judgment and Seeking Dismissal  (Docket No. 36).  On July 29, 2014, Plaintiff filed a Supplemental Brief in Support of Summary Judgment and Opposing Dismissal (Docket No. 39). On August 15, 2014, this Court ordered Plaintiff to file the relevant un-redacted Licensing Agreement within ten days of the Court's order (Docket No. 41). On August 27, 2014, Plaintiff filed, under seal, the agreement affording it the proprietary rights to maintain its claims, which is also subject to a stipulated protective order  (Docket Nos. 44 & 45).

## IV.  ANALYSIS

### A.    DEFENDANT'S MOTION TO DISMISS

On June 25, 2014, this Court denied Defendants' Motion to Dismiss for failure to join an indispensable third party, pending Plaintiff's submission of the agreement granting it the proprietary rights it seeks to enforce in this action (Docket No. 33). On August 27, 2014, Plaintiff filed an un-redacted copy of its agreement with Zuffa, Inc., which the Court has reviewed (Docket No. 44). For the reasons that follow, the undersigned Magistrate finds that Plaintiff has the requisite proprietary rights to maintain its claims under 47 U.S.C. § 605 and §553. Accordingly, Defendants' Motion to Dismiss is denied.

1.      STATUTORY STANDING

"[A] plaintiff must possess both constitutional and statutory standing in order for a federal court to have jurisdiction." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 606 (6th Cir. 2007)(quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)(internal quotations omitted)). The party invoking federal jurisdiction bears the burden of establishing standing. *Loren*, 505 F.3d at 607 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). "Where a plaintiff lacks statutory standing to sue, her claim should be dismissed for failure to state a claim upon which relief can be granted." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011)(citing *Traverse Bar Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 626 (6th Cir. 2010)).

The language of both 47 U.S.C. § 605 and § 553 authorizes "any person aggrieved" by a violation of subsection (a) of their respective statutes to bring a civil action in federal court for injunctive relief, damages, and costs. 47 U.S.C. §§ 605(e)(3)(A), 553(c)(1) (West 2014). To have standing as "any person aggrieved" under § 605, one must be  a person with proprietary rights in the intercepted communication by wire or radio, including wholesale or retail distributors of satellite cable programming." 47 U.S.C. § 605(d)(6) (West 2014). Although § 553 does not specifically define "any person aggrieved," the language of § 553(a)(1) suggestss that in order to be a person aggrieved under the statute, one must be a cable operator or someone otherwise

5

authorized by law to consent to the interception of a "communications service" over a "cable system." *See* 47 U.S.C. § 553(a)(1) (West 2014).

In *National Satellite Sports, Inc. v. Eliadis, Inc*., 253 F.3d 900, 914 (6ᵗʰ Cir. 2001), the Sixth Circuit dismissed the notion that an electronic transmission can be severed from the content of the transmission in rejecting an argument that a commercial distributor of a television event did not have proprietary rights in the telecast.  The Sixth Circuit held that § 605 protects both the *transmission* and its *contents,* noting that the commercial and residential distributors both had "proprietary interests in the *transmission* of the *content*." *Id.* at 915 (emphasis in original).  The terms of the agreement between Plaintiff and Zuffa describe Plaintiff's rights as "closed-circuit broadcast rights," but otherwise reserve and assign all proprietary rights in the content of the UFC event and related intellectual property to Zuffa.  Nevertheless, the terms of the agreement compel  Plaintiff to make a "concentrated effort to discourage theft of service" and authorizes Plaintiff to maintain a piracy program to protect its closed-circuit broadcast rights.  There is no requirement that Plaintiff join Zuffa as a party to such actions.  Accordingly, the undersigned Magistrate finds Plaintiff has proprietary interests in the transmission of the content and has the necessary standing to maintain this action.

### 2.     FAILURE TO JOIN A NECESSARY PARTY

The Federal Rules of Civil Procedure permit a court to dismiss a cause of action where there is a failure to join a necessary party.  *See* FED. R. CIV. P. 19 (West 2014).  Rule 19 states that: "[w]henever feasible, the persons materially interested in the subject of an action . . . should be joined as parties so that they may be heard and a complete disposition made." FED. R. CIV. P. 19 advisory committee's note (West 2014). "[T]he essence of Rule 19 is to balance the rights of all those whose interests are involved in the action." *Id*. at 665.  The Sixth Circuit recognizes that "the resolution of the question of joinder under Rule 19 . . .involves a three-step process." *Keweenaw Bay Indian Community v. State*, 11 F.3d 1341, 1345 (6th Cir. 1993)(citation omitted).

First the court must determine whether a party is necessary to the action pursuant to Rule 19(a).

*Keweenaw*, 11 F.3d at 1345.  The language of Rule 19(a) provides:

> (a) Persons Required to Be Joined if Feasible (1) Required Party. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV P. 19(a) (West 2014).  Should the court determine that the absent party falls within one of the provisions of Rule 19(a), the party is one to be joined so long as feasible. *Keweenaw*, 11 F.3d at 1345.  At steps two and three, the court must consider issues of personal jurisdiction and indispensability. *Id*. at 1345-46.  "If personal jurisdiction is present, the party shall be joined; however, in the absence of personal jurisdiction (or if venue as to the joined party is improper), the party cannot properly be brought before the court." *Id*. at 1346.  "If such is the case, the court proceeds to the third step, which involves an analysis of the factors set forth in Rule 19(b) to determine whether the court may proceed without the absent party or, to the contrary, must dismiss the case due to the indispensability of that party." *Id.* at 1346.

The undersigned Magistrate finds that joining Zuffa to this action is not required under FED. R. CIV. P. 19.  Plaintiff's agreement with Zuffa designated it as the exclusive distributor of the UFC event to commercial establishments via closed-circuit television.  A commercial establishment could only lawfully exhibit the UFC event to its patrons by acquiring a license from Plaintiff.  Showing the UFC event in a commercial establishment without the necessary license infringes upon Plaintiff's exclusive commercial "closed-circuit broadcast rights."  Sections 605 and 553 were specifically enacted to protect the broadcast rights of parties such as the Plaintiff.  Zuffa's rights in the UFC content and related intellectual property are independent of Plaintiff's closed circuit broadcast rights and actionable under different statutes.  Given that Zuffa does not satisfy the

criteria of Rule 19(a), it is not determined to be a necessary or indispensable party to this action.

For these reasons, Defendants' Motion to Dismiss for failure to join a necessary and indispensable party is denied.

**B.      MOTIONS FOR SUMMARY JUDGMENT**

Also Pending is Plaintiff's Motion for Summary Judgment as to Counts 1 and 2, Defendant Diacou's Motion for Summary Judgment as the sole shareholder of Defendant KSD, Inc., and the parties' Supplemental Responses (Docket Nos. 20, 30, 36 & 39).  For the reasons that follow, the undersigned Magistrate denies both Plaintiff's and Defendant Diacou's Motions for Summary Judgment.

**1.      LEGAL STANDARD FOR SUMMARY JUDGMENT MOTIONS**

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and the associated case law.  *Miller v. Transfreight, LLC*, 2013 WL 4039033, at \*1 (S.D. Ohio 2013).  Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED R. CIV. P. 56(c) (West 2014).  Alternatively, summary judgment is denied "if there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Miller*, 2013 WL 4039033, at \*1 (citing *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992)(quoting *Anderson v. Liberty Lobby, Inc.*, 106 S.Ct. 2505, 2511 (1986)).  Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).

A fact is "material" if it might affect the outcome of the lawsuit.  *Anderson*, 477 U.S. at 248.  A material fact is "genuine," if it is such "that a reasonable jury could return a verdict for the nonmoving party. *Id.* "[I]nferences to be drawn from the underlying facts contained in [affidavits, pleadings, depositions, answers to

interrogatories, and admissions] must be viewed in the light most favorable to the party opposing the motion." *Eliadis, Inc.*, 65 F.Supp.2d at 664 (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The moving party bears the burden of making a prima facie showing that there is an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The reviewing court must examine the record to determine whether the moving party, "in depositions, answers to interrogatories, admissions, affidavits and the like has demonstrated 'the absence of a genuine issue of material fact' . . . and his entitlement to judgment as a matter of law." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(quoting *Celotex*, 447 U.S. at 323)(citation omitted)).

If the moving party meets their burden then the burden shifts to the non-moving party to show, "by affidavits or as otherwise provided under Rule 56 . . . *that there is a genuine issue for trial.*" *Banks*, 548 U.S. 529 (citation omitted)(emphasis in original). The nonmoving party must provide some evidence to demonstrate that there is a genuine issue for trial beyond the pleadings themselves. *Celotex*, 477 U.S. at 324. A non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007)(quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

In evaluating a motion for summary judgment, the judge must determine "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*.

### 2.    COUNT 1 - 47 U.S.C. § 605

To combat the growing problem of cable theft, Congress enacted the Cable Communications Policy Act of 1984, adding to and amending certain provisions of the existing Federal Communications Act of 1934. *See Eliadis,* 253 F.3d at 911 (citing H.R. Rep. No. 98-934, at 83 (1984)). Among the changes, the 1984 legislation

added subsections (b) thru (e) to § 605, but left subsection (a) unchanged.  *Id.*  In *Eliadis*, the Sixth Circuit

interpreted each sentence in Section 605(a) to set forth separate prohibitions for types of unauthorized

publication or use of communications:

> The first sentence states:

>> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception . . . to any person other than the address, his agent or attorney . . .

> 47 U.S.C. § 605(a).  The second sentence of § 605(a) prohibits piracy as [it is] traditionally understood:

>> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person.

> *Id.*  Finally, the third sentence provides:

>> No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

> *Id.*

*Eliadis*, 253 F.3d at 911.  Courts in this district have recognized that there is no mens rea or scienter elements

for a non-willful violation of § 605(a).  *See Joe Hand Promotions, Inc. v. Easterling*, 2009 WL 1767579, *4

(N.D. Ohio 2009)(citing *Kingvision Pay Per View, Ltd. v. Williams*, 1 F.Supp.2d 1481, 1484 (S.D. Ga. 1998)).

Plaintiff argues that Defendants are liable under 47 U.S.C. § 605 or § 553 on the grounds that they

unlawfully exhibited, published or divulged the signal transmitting the UFC event by way of a satellite or cable

transmission (Docket No. 20, p. 5 of 22).  Since both statutes impose strict liability on violators, Plaintiff

concludes that it is entitled to summary judgment on the basis of Mr. Tatad's affidavit (Docket No. 20, p. 5 of

22).  In their Opposition to Plaintiff's Motion for Summary Judgment, Defendants dispute Mr. Tatad's affidavit

and maintain that the UFC event at issue was never exhibited in the Six Pack Bar & Grill on April 30, 2011

(Docket No. 30, pp. 15-18 of 18).  To support their assertion, Defendants offer the affidavits of both Mr. Diacou

and Mr. Christides who both claim that the UFC event was not shown on the evening of April 30, 2011 (Docket

No. 30, Attachments 2 & 3).

The conflicting affidavits concerning the television programming shown at the Six Pack Bar & Grill on

April 30, 2011 create a genuine issue of material fact.  The Court is precluded from making credibility

determinations in evaluating summary judgment motions under FED. R. CIV P. 56.  *See Anderson*, 477 U.S. at

252.  Accordingly, Plaintiff's Motion for Summary Judgment with respect to Count 1 is denied.

**3.      COUNT 2 - 47 U.S.C. § 553**

Under Section 553(a)(1), "[n]o person shall intercept or receive or assist in intercepting or receiving any

communications service offered over a cable system, unless specifically authorized to do so by a cable operator

or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1) (West 2014).  Section 553 was

enacted as part of the Cable Communications Policy Act of 1984. *Int'l Cablevision, Inc. v. Skykes*, 75 F.3d 123,

132 (2d Cir. 1996).  The House Committee's Section-by-Section analysis of the Cable Communications Policy

Act notes that the legislation was in response to the growing problem of cable service theft, which was

depriving the cable industry of millions of dollars in revenues.  *See* H.R. Rep. 98-934, 98th Cong., 2d Sess.,

1984 U.S.C.C.A.N. 4655 (West 2014).  By enacting § 553 Congress provided a new cause of action against the

unauthorized reception of cable service over a cable system, but the House Committee's intent is clear from

their report which states that "[n]othing in [§ 553] was intended to affect the applicability of existing section

605 to theft of cable service, or any other remedies available under existing law for theft of service." H.R. Rep.

98-934, 98th Cong., 2d Sess., 1984 U.S.C.C.A.N. 4655 (West 2014).  The Committee also explained that "§ 553

sets forth a liability provision specifically applicable to theft of services offered over a cable system," writing:

> The Committee intends the phrase 'service offered over a cable system' to limit the applicability of this section to theft of a service from the point at which it is actually being distributed over a cable system.  Thus, situations arising with respect to the reception of services which are transmitted over-the-air (or through technology), but which are also distributed over a cable system, continue to be subject to resolutions under section 605 to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system.

*Id.*  Despite the legislative history, courts continue to struggle with the interplay between § 553 and § 605, whether the two statutes overlap, and to what extent.[1]

The billing records submitted by Defendant KSD reflect that the Six Pack Bar & Grill received both cable and satellite television programming in April 2011 (Docket No. 30, Attachment 1, pp. 40-41; 43 of 48).  Plaintiff does not allege the specific manner in which Defendants may have received its communications, but Mr. Hand's affidavit contains a list of common methods that signal pirates use to intercept and broadcast Plaintiff's programming (Docket No. 20, Attachment 1, p. 3 of 9).  While § 553 is a strict liability statute, the

---

[1] The difference of opinion concerning § 553 and § 605 focuses on the applicability of § 605(a) to an intercepted transmission of a television signal via satellite which is then transmitted over a cable system.  For example, in *Int'l Cablevision, Inc. v. Sykes*, the Second Circuit examined the legislative histories of § 605 and § 553, concluding that it was Congress' intent to establish "§ 605's exclusive jurisdiction over the transmission of a television signal by radio prior to the transmission of that same signal by cable." *Sykes*, 75 F.3d at 132.  In other words, if the transmission of the television signal was sent via radio before being distributed over a cable system, then only § 605(a) applies regardless of where the interception or receipt occurs.  The Third Circuit, however, interpreted the same legislative history differently in *TKR Cable Co. v. Cable City Corp.*, 267 F.3d 196, 206-07 (3d Cir. 2001), observing that it was Congress' intent that § 605 apply to radio transmissions, but that once a satellite transmission reaches a cable system's wire distribution phase, it is only subject to an action under § 553 and not § 605. *Id.* The Third Circuit's approach in *TKR* is consistent with decisions by courts in the Sixth, Seventh, Tenth, and Eleventh Circuits. *See United States v. Norris*, 88 F.3d 462, 463 (7th Cir. 1996); *Cablevision of Mich., Inc. v. Sports Palace, Inc.*, 27 F.3d 566, at *1 (6th Cir. 1994)(unpublished). *Kingvision Pay Per View, Ltd. v. Duermeier*, 24 F.Supp.2d 1179, 1180 (D. Kan. 1998); *Scientific-Atlanta, Inc. v. Fenley*, 1997 WL 33543688, at *1 (N.D. Ga. 1997)(unpublished).

conflicting affidavits of Mr. Tatad, Mr. Diacou, and Mr. Christides establish a genuine issue of material fact

concerning whether the UFC event was played at the Six Pack Bar & Grill on April 30, 2011.  For this reason,

the Plaintiff's Motion for Summary Judgment on Count 2 is denied.

### 4.    DEFENDANT DIACOU'S MOTION FOR SUMMARY JUDGMENT

The final motion pending before the Court is Defendant Diacou's Motion for Summary Judgment on his

liability as the sole shareholder of Defendant KSD (Docket No. 30, pp. 13-15 of 18)  Since KSD, Inc., is a

corporation organized under the laws of the State of Ohio, which is also the site where the alleged events giving

rise to this action took place, the undersigned Magistrate must assess whether Plaintiff has established the

requisite facts for piercing the corporate veil under Ohio law.  In evaluating Defendant Diacou's Motion for

Summary Judgment, the Court must view the evidence in a light most favorable to Plaintiff.

Under Ohio law, it is "[a] fundamental rule of corporate law that, normally, shareholders, officers, and

directors are not liable for the debts of the corporation." *Belvedere Condominium Unit Owners' Assn. v. R.E.*

*Roark Cos., Inc*., 617 N.E.2d 1075, 1085 (Ohio 1993).  The Ohio Supreme Court has noted adherence "to the

principle that limited shareholder liability is the rule . . . and piercing the corporate veil is the 'rare exception'

that should only be 'applied in the case of fraud or certain other exceptional circumstances.'" *Dombroski v.*

*Wellpoint, Inc.*, 895 N.E.2d 538, 544 (Ohio 2008)(quoting *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475

(2003)).  In Ohio, in order to pierce the corporate veil and hold shareholders liable for corporate misdeeds, a

plaintiff must show: "(1) control over the corporation by those to be held liable was so complete that the

corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be

held liable was exercised in such a manner as to commit fraud[,] an illegal act, [or a similarly unlawful act]

against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff

from such control and wrong." *Belvedere*, 617 N.E.2d at 1085; *see also Dombroski*, 895 N.E.2d at 546 (adding

"similarly unlawful act" to the second prong of the *Belvedere* test); *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 605 (6ᵗʰ Cir. 2005); *Bucyrus*, 643 F.2d at 418.  All three prongs of the test must be satisfied in order to pierce the corporate shield. *Dembroski*, 895 N.E.2d at 543.  The burden of proof is with the party seeking to impose liability on the shareholder. *Corrigan v. U.S. Steel Corp.*, 478 F.3d 718, 724 (6ᵗʰ Cir. 2007); *LeRoux's Billyle Supper Club v. Ma*, 77 Ohio App.3d 417, 423 (Ohio 6ᵗʰ Dist. Ct. App. 1991).

In evaluating the first prong of *Belvedere* with respect to shareholder control over a corporation, Ohio courts consider a variety of factors including: (1) grossly inadequate capitalization; (2) failure to observe corporate formalities; (3) insolvency of the debtor corporation at the time the debt was incurred; (4) shareholders holding themselves out as personally liable for certain corporate obligations; (5) diversion of funds or other property of the company property for person use; (6) the absence of corporate records; and (7) the fact that the corporation was a mere facade for the operations of the dominant shareholder. *See Corrigan*, 478 F.3d at 724; *LeRoux's*, 77 Ohio App.3d at 425 (citations omitted). "Dominance and control over a corporation by a shareholder is insufficient, standing alone, to render the shareholder liable for corporate debts." *LeRoux's*, 77 Ohio App.3d at 425.

Plaintiff's argument in favor of imposing liability on Defendant Diacou is based on his being the sole shareholder, president, and general manager of Defendant KSD, concluding those factors prove Diacou has day-to-day control over the Six Pack Bar & Grill (Docket No. 32, p. 3 of 4).  Plaintiff offers the affidavit of Mr. Hand in contending that the piracy of Plaintiff's communications is not accidental, outlining several of the methods commonly used to intercept and broadcast Plaintiff's programming (Docket No. 20, Attachment 1, p. 3 of 9).  Plaintiff infers that as general manager of the Six Pack Bar & Grill, Defendant Diacou had to have known about the piracy alleged in this case (Docket No. 32, p. 3 of 5).  Ohio courts have recognized that "[a] corporation is a separate legal entity from its shareholders even where there is only one shareholder in the

14

corporation." *Zimmerman v. Eagle Mtge. Corp.*, 110 Ohio App.3d 762, 771 (Ohio 2d Dist. Ct. App.

1996)(citing *Ferguson v. Strader*, 94 Ohio App.3d 622, 628 (Ohio 12th Dist. Ct. App. 1994); *LeRoux's*, 77 Ohio

App.3d at 420.  Those courts have also acknowledged that the existence of a single shareholder can be a

"powerful indicator of that shareholder's exercising control so complete over the corporation that it 'had no

separate mind, will or existence of its own.'" *Taylor Steel, Inc. v. Keeton*, 417 F.3d 598, 607 (6th Cir.

2005)(citation omitted); *Zimmerman*, 110 Ohio App.3d at 772-73.

There is no dispute that Defendant Diacou is the sole shareholder, president and general manager of

Defendant KSD.  Given Defendant Diacou's role in Defendant KSD, the methods for piracy outlined by

Plaintiff, and viewing the facts in a light most favorable to Plaintiff, the Court must assume that Defendant

Diacou and Defendant KSD had no separate minds, wills, or existence of their own in evaluating the first prong

of *Belvedere*.

The second prong of *Belvedere* requires the Plaintiff to establish that the defendant shareholder's control

of the corporation was exercised to commit fraud, an illegal act, or a similarly unlawful act. *Id*. at 605.  Plaintiff

alleges that Defendants committed an illegal act in unlawfully exhibiting the UFC event at the Six Pack Bar &

Grill, a fact now genuinely disputed by the affidavits of Mr. Tatad, Defendant Diacou, and Mr. Christides

(Docket No. 20, Attachment 2, p. 1 of 5; Docket No. 30, Attachment 2-3).  It is also disputed whether

Defendant Diacou was present at the Six Pack Bar & Grill on the evening of April 30, 2011.  Mr. Tatad's

affidavit details observing a man that night who "seem[ed] to be the owner or manager, addressed as 'Jacko'

and 'Coo' by the bartenders as he went around to visit customers or chase for customers' tabs"(Docket No. 20,

Attachment 2, p. 1 of 5).  Defendant Diacou's affidavit denies that he was present at the bar until 1 a.m. on the

morning of May 1, 2011 (Docket No. 30, Attachment 2, p. 2 of 2).  Since Defendant Diacou's presence in the

bar is relevant to determining whether he exercised control over the Six Pack Bar & Grill to commit fraud, an

illegal act, or similarly unlawful act under the second prong of *Belvedere*, the undersigned Magistrate finds there is a genuine issue of material fact concerning Defendant Diacou's liability.  For this reason, Defendant Diacou's Motion for Summary Judgement is denied.

## V.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss, Plaintiff's Motion for Summary Judgment on Counts 1 and 2 and Defendant Diacou's Motion for Summary Judgment are all denied.

**IT IS SO ORDERED**

/s/Vernelis K. Armstrong
United States Magistrate Judge

Date: September 18, 2014